IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALISA DANIEAL EFURD                                                              PETITIONER
ADC #705910

V.                                      NO. 5:04CV00117 JLH/JWC

LARRY NORRIS, Director,                                                         RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

    2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## **RECOMMENDED DISPOSITION**

Alisa Danieal Efurd, an Arkansas Department of Correction inmate, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry #2). Respondent concedes (docket entry #6) that Petitioner is in his custody and has exhausted all nonfutile state remedies. See 28 U.S.C. § 2254(a) & (b). Because Petitioner's claims are without merit or procedurally barred, the petition should be dismissed.

I.
Background

On the night of February 8, 1996, Petitioner took her nine-month-old daughter, Ollie, to the hospital emergency room in Fort Smith, Arkansas. The baby had a fever and was vomiting. Petitioner said the baby had fallen in her crib and hit her head. After noticing bruises on the baby's arms, legs and head, as well as functioning problems with her left leg and arm, the examining physician ordered x-rays and a CAT scan. When the results were received, the baby was air-lifted to Arkansas Children's Hospital (ACH) in Little Rock

where she died several days later.  When she arrived at ACH, she was examined by Dr. Adalberto Torres, a specialist in pediatric intensive care.  He found multiple bruises, cuts and abrasions about her body, a blood clot on her brain, a blood clot in her scalp, and marks resembling cigarette burns.  He diagnosed her with "child maltreatment syndrome," and he said her subsequent death was due to her severe head injuries.  He said the head injuries were caused by "violent shaking" and a "very physical force" to the back of her head, and could not have occurred merely from falling out of a crib or hitting her head on the crib's railing.  Dr. Charles Tio, a pediatric neurosurgeon, testified that the baby had a skull fracture, a subdural hematoma, and a swollen brain.  A medical examiner with the Arkansas State Crime Laboratory testified that he performed the autopsy on the baby and found, in addition to the head injuries, bruises all over her body in many different stages of healing, a broken rib, and what appeared to be a burn injury on her abdomen.  He testified that her injuries indicated a "chronic abuse pattern."  He testified that the cause of death was "cranial cerebral trauma," and that her injuries were consistent with shaken infant syndrome and shaken impact syndrome.  He said the baby's head was shaken very hard and given angular acceleration, but it also impacted against something firm and unyielding with a large amount of force.  He testified, "This was a battered baby.  She was beaten to death."

There was also evidence that Petitioner was aware her husband was abusing the baby.  When she applied for public housing in October 1995, she said her husband would not be living with them because he was being investigated for abusing their baby.  She later sought to add his name to the list of occupants of the apartment.  Department of Human Services' employees testified that Petitioner told them the bruises were caused by

another child. However, entries in Petitioner's diary, which was introduced into evidence, made it clear that she knew her husband had abused the baby. Additionally, Petitioner gave inconsistent statements to doctors and police officers explaining the baby's injuries.

Following a jury trial in August 1997 in the Circuit Court of Sebastian County, Arkansas, Petitioner was convicted of the first-degree murder of her baby, and she was sentenced to 300 months of imprisonment. (Resp't Ex. 1.)[1] In a separate trial, her husband, James Randall Efurd, was also convicted of first-degree murder. He was sentenced to life imprisonment. See Efurd v. State, 976 S.W.2d 928 (Ark. 1998).

In a direct appeal to the Arkansas Court of Appeals, Petitioner raised the following claims: (1) the trial court erred in allowing the prosecutor to question Petitioner's grandmother about a citation for possession of marijuana; (2) the trial court erred in excluding Petitioner's husband's statements against interest; (3) the trial court erred in admitting typewritten copies of a jailer's handwritten notes; and (4) the trial court erred in denying Petitioner's motion to suppress her statement to police; and (5) the evidence was insufficient to convict her. (Resp't Ex. 2.) Her conviction was affirmed in an unpublished opinion. Efurd v. State, No. CACR 98-142, 1999 WL 54800 (Ark. Ct. App. Feb. 3, 1999) (Resp't Ex. 3).

Petitioner then filed a timely petition for post-conviction relief pursuant to Ark. R. Crim. P. 37, alleging: (1) that her trial attorney was ineffective for failing to raise an issue about an unconstitutional search and seizure, to argue that her arrest was unlawful, to challenge the admissibility of typewritten notes, to argue husband-wife privilege, to secure

---

[1]Respondent's exhibits, unless otherwise indicated, are attached to docket entry #6.

her co-defendant as a witness, to object to pictures that were introduced by the state, to point out that witnesses' testimony offered conflicting statements, and to raise an issue about the lack of a receipt for items seized; (2) that she was subjected to an unconstitutional search and seizure because the consent to search was signed by a minor and there was no receipt of the items taken; (3) that her arrest was unlawful; and (4) that the prosecutor engaged in misconduct by using pictures that created an unfair impression and prejudiced the jury. (Resp't Ex. 4.) An attorney was appointed to represent Petitioner. Her petition was denied as without merit. State v. Efurd, No. CR-96-14-B-G (Sebastian Co. Cir. Ct. Aug. 31, 1999) (Resp't Ex. 5). Although Petitioner notified her attorney of her desire to appeal, the attorney failed to timely perfect an appeal. Counsel then filed a motion for belated appeal, which was also untimely. Efurd v. State, 101 S.W.3d 800 (Ark. 2003) (denying belated-appeal motion, but fining counsel $500 for failing to timely perfect his client's appeal); see Ark. R. App. P.-Crim. 2(e) (motions for belated appeal must be filed within eighteen months of entry of order denying post-conviction relief). There is no evidence or allegation that Petitioner sought any further relief in state court.

    Petitioner then filed this federal habeas petition, advancing the following claims:

(1)     The trial court erred in permitting the prosecutor to question Petitioner's grandmother about Petitioner's arrest for misdemeanor possession of marijuana, for which there was never a conviction;

(2)     Trial counsel failed to point out evidence (hospital records and x-rays) that could have proven Petitioner's actual innocence;

(3)     The prosecutor engaged in misconduct by

        (a) improperly attempting to elicit testimony regarding Petitioner's prior arrest for misdemeanor possession of marijuana;

        (b) concealing evidence regarding the victim's alleged prior injuries;

       (c) intentionally suborning perjury regarding the victim's alleged prior injuries;

       (d) cumulative error in concealing and/or withholding exculpatory and impeachment evidence and other acts of misconduct;

(4)    Petitioner's trial counsel was ineffective in

       (a) failing to procure Petitioner's husband or his counsel to establish that he was unavailable to testify;

       (b) failing to point out conflicting testimony given by the state's expert medical witnesses;

       (c) failing to argue that a jailer's handwritten notes were lost or destroyed in bad faith;

       (d) failing to argue that the victim's alleged prior injuries were actually the injuries for which the victim was admitted to the hospital on February 8, 1996;

       (e) failing to argue that the victim's death was caused by medical negligence and incompetence; and

(5)    Her Rule 37 post-conviction counsel was ineffective in failing to timely perfect her appeal and/or timely file a motion for belated appeal.

Respondent asserts: (1) that this Court is bound by the Arkansas state courts' ruling as to some of Petitioner's claims; (2) that some of Petitioner's claims are procedurally defaulted because she failed to properly present them to the state courts; and (3) that Ground 5 is not a proper basis for federal habeas relief. At the invitation of the Court, Petitioner responded to these arguments (docket entry #10). Also, at the Court's direction, Respondent filed the seven-volume record of Petitioner's state court proceedings (docket entry #14).

## II.
## Ground 1

In her first claim, Petitioner asserts that the trial court erred in permitting the

prosecutor to question Petitioner's grandmother about Petitioner's arrest for misdemeanor possession of marijuana. She says the charges were dismissed, and she was never convicted of the offense. She says that the evidence was inadmissible under Ark. R. Evid. 401, 402, 403 and 404 and that its admission violated her federal constitutional rights to a fair trial and due process.

Petitioner's grandmother, Opal King, testified as a defense witness. In response to defense counsel's questioning, she said Petitioner was a very sweet and loving person, did not bother anyone, and "[n]ever was in any trouble or nothing." (Tr. 1049.) On cross-examination, the prosecutor asked King if she was aware of any drug use by Petitioner, and King said she was not. Over defense counsel's objection, the prosecutor then asked King if she knew Petitioner had been arrested for possession of marijuana and possession of an instrument of a crime on August 19, 1995, during the time she had been living with King. King replied that she did not, and no further questions were asked. (Tr. 1058-61.)

In her direct appeal, Petitioner challenged the admissibility of this testimony under state evidentiary rules and case law. The Arkansas Court of Appeals found that it was admissible under Ark. R. Evid. 404 and 405, allowing evidence of relevant specific instances of conduct where a person's character is an element of a "charge, claim, or defense." According to the state court, Petitioner had placed her character in issue when her attorney asked the witness, "Tell me about Alisa living with you. What kind of person is she?" (Tr. 1049.) The court held it was "proper for the prosecution to challenge [the grandmother's] opinion testimony that [Petitioner] had never been in trouble by questioning whether she knew about [Petitioner's] arrest." Efurd, 1999 WL 54800, at *3-*4.

Where a state court has previously adjudicated a claim on the merits, a federal

habeas court may grant habeas relief for the same claim in only three limited situations: where the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); **or** (2) "involved an unreasonable application" of clearly established federal law, id.; **or** (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

No contention is made regarding the state court's characterization of the underlying facts. Therefore, the question is whether the Arkansas Court of Appeals' determination that the grandmother's testimony was admissible was contrary to or an unreasonable application of any clearly established federal law. This Court finds that it was not.

It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A federal habeas court is prohibited from reviewing whether evidence of "other crimes, wrongs, or acts" was properly admitted by the state trial court pursuant to state evidentiary rules, which is simply a matter of state evidentiary law. Sera v. Norris, 400 F.3d 538, 546-47 & n.8 (8th Cir.), cert. denied, 126 S. Ct. 283 (2005). Instead, the admission of evidence at a state trial will form the basis for federal habeas relief only when the evidentiary ruling was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Osborne v. Purkett, 411 F.3d 911, 917 (8th Cir. 2005), cert. denied, 126 S. Ct. 1569 (2006).

The United States Supreme Court has "very narrowly" defined the category of infractions that violate the due process test of fundamental fairness. Dowling v. United

States, 493 U.S. 342, 352 (1990).  The Supreme Court has thus declined to hold that evidence of other crimes or wrongs is so extremely unfair that its admission violates fundamental conceptions of justice or the due process test.  Estelle, 502 U.S. at 75 & n.5 (stating that Supreme Court was expressing no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) (rejecting the argument that due process requires the exclusion of prejudicial evidence).

Petitioner says the state decision was contrary to Old Chief v. United States, 519 U.S. 172 (1997), which is inapposite for several reasons.  Most important of these is that Old Chief discussed only whether the admission of evidence was an abuse of discretion under Fed. R. Evid. 403, not whether a trial was fundamentally unfair by due process standards.  Additionally, Old Chief concerned the admissibility of details of a prior conviction underlying a felon-in-possession charge, which is not the issue here.

Thus, there is no clearly established United States Supreme Court precedent which holds that a state violates due process by admitting character evidence in the form of other bad acts evidence.  Furthermore, Petitioner's counsel was permitted to litigate this issue at trial and on appeal, with the appellate court articulating a reasoned basis for admissibility. Petitioner was permitted to present testimony of her good character, and was not prohibited from explaining or otherwise alleviating the impact of the evidence of her arrest on drug charges.  There was other evidence indicating drug use by Petitioner.  (Tr. 573, 585, 864-68, 893-94, 902, 920. 1184, 1205.)  She also told police that she had been smoking marijuana since the age of twelve and that she did not think it affected her ability to care for her baby.  (Tr. 867, 893-94.)  Under these circumstances, the evidentiary ruling

9

was not of such magnitude as to fatally infect Petitioner's trial proceedings and deprive her of due process.

Therefore, the Arkansas Court of Appeals' rejection of Petitioner's claim regarding her prior arrest was not contrary to, or an unreasonable application of, any United States Supreme Court precedent under § 2254(d).

### III.
### Ineffective Assistance of Trial Counsel

Petitioner alleges that her trial counsel was ineffective (1) for failing to point out evidence that could have proven her innocence, specifically, x-rays taken upon the baby's initial admission to the hospital (Ground 2); (2) for failing to procure her husband or his counsel to establish that he was unavailable to testify (Ground 4(a)); (3) for failing to point out conflicting testimony given by the state's expert medical witnesses (Ground 4(b)); (4) for failing to argue that a jailer's handwritten notes were lost or destroyed in bad faith (Ground 4(c)); (5) for failing to argue that the victim's allegedly pre-existing injuries were actually the injuries for which she was initially admitted to the hospital (Ground 4(d)); and (6) for failing to argue that the victim's death was caused by medical negligence and incompetence (Ground 4(e)).  Respondent contends that these claims are all procedurally defaulted.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional errors made there.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); see 28

U.S.C. § 2254(b) & (c) (requiring federal habeas petitioner to pursue all remedies available in the state courts). A petitioner has fairly presented a claim when he has properly raised "the same factual grounds and legal theories" in each available state court, and his failure to do so will result in a procedural default. Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003). Failure to appeal the denial of a post-conviction petition to the highest state court constitutes a procedural default. Osborne, 411 F.3d at 919.

Where a procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986). Where no cause has been demonstrated, the prejudice element of the procedural default analysis need not be addressed. McCleskey v. Zant, 499 U.S. 467, 502 (1991).

All of Petitioner's ineffective-assistance claims are defaulted due to her failure to perfect her state post-conviction appeal. Although this failure was the fault of her state post-conviction counsel, this cannot excuse her default. Because there is no constitutional entitlement to counsel in state post-conviction proceedings, any ineffectiveness of counsel in connection with such proceedings cannot constitute cause excusing a procedural default. Coleman, 501 U.S. at 752, 757; Taylor v. Bowersox, 329 F.3d 963, 971 n.13 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004).

Grounds 2 and 4(b)-(e) are further defaulted because Petitioner did not specifically raise them in her Rule 37 proceedings. To preserve an ineffectiveness of counsel claim

11

for federal habeas review, a petitioner must have raised in state court the factual and legal bases for each specific ineffectiveness claim. <u>Osborne</u>, 411 F.3d at 919 & n.7; <u>Flieger v. Delo</u>, 16 F.3d 878, 885 (8th Cir. 1994). A petitioner who presents to the state courts "a broad claim of ineffectiveness as well as some specific ineffectiveness claims [has not] properly presented all conceivable specific variations for purposes of federal habeas review." <u>Flieger</u>, 16 F.3d at 885. If a specific factual ground for an ineffective-assistance claim is raised in state court and a related, but different, factual ground is asserted in federal court, the latter is procedurally defaulted. <u>Osborne</u>, 411 F.3d at 919 n.7.

Petitioner did not raise Grounds 2, 4(d) and 4(e) at all in her Rule 37 petition. She did raise a claim that her trial attorney was ineffective for failing to "point out that witnesses' testimony offered conflicting statements." (Resp't Ex. 4, ¶ 17(7).) However, this generic allegation regarding unidentified witnesses and unidentified testimony[2] was insufficient to apprise the state court of her current, more specific, claim based on conflicting testimony given by the various medical experts, as asserted in Ground 4(b). Furthermore while she argued in her Rule 37 petition that counsel was ineffective for failing to "raise an issue about typewritten notes being admitted into evidence, when the original handwritten notes were ordered by the trial court," she did not argue her current variation of this ineffectiveness claim in Ground 4(c), i.e., that the jailer's original handwritten notes were lost or destroyed in bad faith.[3] Petitioner has failed to demonstrate cause for these

---

[2]The trial transcript reflects that twenty-four witnesses testified during the four-day trial.

[3]In her direct appeal, she argued another variation of this claim, although not in the context of ineffective assistance of counsel. Her argument on appeal was that the typewritten notes were admitted in violation of the best evidence rule and that their probative value was outweighed by their prejudicial effect. (Resp't Ex. 2, at 5.)

12

additional defaults.

Petitioner does assert that she is actually innocent of the offense for which she was convicted. Actual innocence constitutes a narrow exception to the cause-prejudice requirement, but it is reserved for cases that are "truly extraordinary." Schlup v. Delo, 513 U.S. 298, 327 (1995). To pass through the actual-innocence gateway and permit review of otherwise defaulted claims, a habeas petitioner must (1) support his allegations of constitutional error with new reliable evidence not presented at trial and (2) show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him." Id. at 324, 329.

In support of her claim of innocence, Petitioner says that, when her baby was admitted to the hospital, chest and skull x-rays were done, and nothing was said about a fractured rib. She says the baby was sedated so that the CAT scan could be performed, and never regained consciousness. The baby was then taken to ACH, where she was left under observation for eighteen hours. Petitioner says no mention was made of a broken rib until after the autopsy was performed. Petitioner says that had the state provided "complete hospital records" of the victim, she would have been able to prove that the broken rib was "likely the result of medical workers performing CPR on the victim," rather than abuse. She says this would have allowed the jury to consider that the victim's injuries were likely due to a one-time violent episode committed by Petitioner's husband without her knowledge, rather than a pattern of abuse of which she should have been aware. She says the state was aware of the existence of x-rays proving there were no pre-existing broken bones and that the state medical examiner falsely testified that there was a prior broken rib. She also says the broken rib and the "fresher" bruises discovered at autopsy

13

were actually caused by medical staff attempting to resuscitate the baby.

First, Petitioner has not established the existence of any x-rays or other hospital records which prove there were no broken bones (other than the baby's skull) when the baby was first brought to the hospital. The medical examiner testified that the autopsy revealed a "healing fracture, about a month old or so." (Tr. 790, 798.) He said the injury was "not evident externally at all" but "would probably be diagnosable on a chest x-ray." (Tr. 822-23.) This is certainly not proof that the earlier x-ray definitively showed the absence of a rib fracture.

Second, Petitioner has not established that the x-rays or any other hospital records are "new" evidence that was unavailable to her or her counsel during her state court proceedings. Nothing indicates that any medical records were withheld or hidden from her. In fact, at trial, Petitioner testified that she couldn't figure out why the Fort Smith hospital did not find the broken rib on the x-rays. (Tr. 1139.) This indicates an awareness at trial that x-rays existed which could have been used in her defense. See Osborne, 411 F.3d at 920 (evidence not new if available at trial or could have been discovered earlier through the exercise of due diligence); Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (no actual-innocence showing with information that was available at trial, on direct appeal and throughout post-conviction proceedings), cert. denied, 126 S. Ct. 133 (2005). All of the other arguments Petitioner makes are simply inferences that she says should have been drawn from evidence already in the record.

Third, none of the evidence cited by Petitioner proves her actual innocence in light of the rest of the record. The baby was taken to the emergency room on February 8, she died on February 12, and the autopsy was performed on February 13. As stated, the

medical examiner testified that the autopsy showed a "healing fracture," about a month old. (Tr. 790, 798.) He testified that the broken rib was "not recent," and he classified it as an "old injury" in his report. (Tr. 790, 804.) He said that type of injury would have been caused by excessive squeezing, kicking or punching. (Tr. 799.) A jailer testified that, when Petitioner was visiting her husband in jail, she asked him why he had kicked the baby in the ribs "awhile back when she was in the floor." (Tr. 576-77, 579-80.) This evidence does not support an argument that the rib was broken just one day before the autopsy by medical personnel attempting to resuscitate the baby.

As to the bruises, the jury was presented with photographs of the baby at the time she was brought to the emergency room at the Fort Smith hospital, as well as the testimony of physicians, police officers and social workers who observed her, all documenting the existence of multiple bruises and other injuries at that time. (Tr. 521-23, 548-49, 642-43, 647-48.) The doctor who examined the baby at ACH when she arrived there several hours later testified that the bruises he observed were of varying ages, with the bluish-reddish bruises being up to two days in age, and the yellowish ones being at least five to seven days old. (Tr. 759, 776.) The medical examiner who performed the autopsy five days later also explained that the age of bruises can be determined based on discoloration and distinctness of the margins. (Tr. 792-94.) He testified that the "multiple" bruises on the baby's head were "of varying ages, indicating [a] chronic abuse pattern." Referring to autopsy photos during his testimony, he pointed out at least seventeen bruises on her head of "different severity and different ages," as well as a "brand new, very large bruise" on the back of her head at the "impact site" of a three-inch fracture. He also noted multiple facial bruises and small contusions on her back. (Tr. 793-98.) His autopsy report

identifies in detail every bruise and abrasion observed on the baby's head, neck, trunk and extremities. (Tr. 804-06.) No bruises on her chest were noted. This record undermines Petitioner's assertion that any bruises were the result of resuscitation efforts one day earlier and instead supports the jury's apparent conclusion that they represented a pattern of abuse over a period of time before the baby's death.

In short, Petitioner has presented nothing which demonstrates that, more likely than not, no reasonable juror would have convicted her. The actual-innocence exception is inapplicable, and all of Petitioner's ineffective-assistance claims should be dismissed as procedurally barred.

## IV.
## Prosecutorial Misconduct

In Ground 3, Petitioner presents several claims of prosecutorial misconduct.

Petitioner first alleges in Ground 3(a) that the prosecutor improperly attempted to elicit testimony regarding her prior arrest for misdemeanor possession of marijuana. This claim was presented in Petitioner's direct appeal in the form of a claim of trial court error. As explained in discussing Ground 1, the Arkansas Court of Appeals' determination that the testimony was admissible under state law was not contrary to, or an unreasonable application of, any United States Supreme Court precedent. Because evidence of Petitioner's arrest was admissible under state law, it was not improper for the prosecutor to elicit testimony on this issue.

Petitioner's remaining claims in Grounds 3(b)-(d) are that the prosecutor engaged in misconduct by concealing evidence regarding the victim's alleged prior injuries,

16

suborning perjury regarding the injuries, and "cumulative error in concealing and/or withholding exculpatory and impeachment evidence and other acts of prosecutorial misconduct." In support, she cites Kyles v. Whitley, 514 U.S. 419 (1995), which held that the state's obligation to disclose material evidence favorable to the defense, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), turns on the cumulative effect of all such evidence suppressed by the state.

Petitioner raised none of these claims in her direct appeal or state post-conviction proceedings. She says there was no remedy because the claims are based on newly discovered evidence of which she was not aware at the time she sought post-conviction relief. The only evidence to which Petitioner refers are the chest x-rays performed upon the victim's admission to the hospital on February 8. However, there is no proof that these x-rays showed the absence of a rib fracture, nor is there any evidence whatsoever that these x-rays, or any other medical records, were concealed or withheld from Petitioner or her trial counsel, or that any medical testimony given at the trial was false. Brady applies to information exclusively within the prosecutor's control and knowledge, and there can be no Brady violation where information was equally available to the defense. Liggins v. Burger, 422 F.3d 642, 655 (8th Cir. 2005). Furthermore, Petitioner has failed to demonstrate that the allegedly withheld evidence was material, that is, "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles, 514 U.S. at 433-34. As discussed, the fact that no broken rib may have been mentioned in earlier medical records was not necessarily inconsistent with the medical examiner's testimony that he found a month-old, healing rib fracture that was not evident externally but "probably" would have been detected by an x-

ray. In any event, the existence or nonexistence of this one injury pales in comparison to the undisputed evidence of other repeated abuses to the victim.

Petitioner's prosecutorial misconduct claims, as raised in Grounds 3(b)-(d), are procedurally defaulted, and she has failed to demonstrate cause-prejudice or actual innocence. Moreover, she has failed to demonstrate that her underlying Brady claims have any merit.

Ground 3 should be dismissed in its entirety.

V.
State Post-Conviction Counsel

Petitioner's last claim is that her state post-conviction counsel was ineffective in failing to perfect her Rule 37 post-conviction appeal or file a timely motion for belated Rule 37 appeal. There is no federal constitutional right to the assistance of state post-conviction counsel, much less the effective assistance of such counsel. Coleman, 501 U.S. at 752; Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir.), cert. denied, 126 S. Ct. 93 (2005). This claim, therefore, should be dismissed as without merit.

VI.
Conclusion

Petitioner's claims are without merit or procedurally barred. This conclusion is based on the record presented and is reached without the necessity of an evidentiary hearing. See Rule 8(a), Rules Governing § 2254 Cases in United States District Courts; Cox, 398 F.3d at 1030 (federal habeas court's power to conduct evidentiary hearing is "sharply limited" by statute); Burton v. Dormire, 295 F.3d 839, 848 (8th Cir. 2002) (no

hearing required where record clearly indicates that claims are either barred from review or without merit).

Therefore, this 28 U.S.C. § 2254 petition for writ of habeas corpus should be dismissed in its entirety, with prejudice.

DATED this 10th day of May, 2006.

                                                UNITED STATES MAGISTRATE JUDGE